**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID ZIMMERMAN & CHANNELLE ZIMMERMAN, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>HIGHMARK, INC.,<br><br>         Defendant. | Case No.   23-462<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs David Zimmerman and Chanelle Zimmerman (together, "Plaintiffs") bring this class action against Defendant Highmark, Inc. ("Highmark" or "Defendant") for their failure to properly secure and safeguard Plaintiffs' and Class Members' protected health information and personally identifiable information stored within Defendant's information network.

## INTRODUCTION

1.    Defendant is one of America's leading health insurance organizations   and the fourth largest Blue Cross Blue Shield Association affiliated organization, covering the insurance needs of millions of individuals in Pennsylvania, Delaware, New York, and West Virginia.

2.    Defendant acquired, collected, and stored   Plaintiffs'   and Class Members' PHIIPII and/or financial information.

3.    Personal health information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act ("HIPAA"), which may include test results, procedure descriptions, diagnoses, personal or family medical histories and data points applied to a set of demographic information for a particular patient.

1

4.    Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, and is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

5.    At all relevant times, Defendant knew, or should have known, that Plaintiffs and Class Members would use Defendant's services to store and/or share sensitive data, including highly confidential PHII/PII. Between December 13, 2022 and December 15, 2022, upon information and belief, unauthorized third-party cybercriminals gained access to Plaintiffs' and Class Members' PHI/PII and financial information with the intent of engaging in misuse of the PII and financial information, including marketing and selling Plaintiffs' and Class Members' PHI/PII.

6.    The number of individuals whose data was exposed as a result of Defendant's failure to implement appropriate security safeguards is in excess of 300,000 persons.

7.    The vulnerable and potentially exposed data at issue was stored on Defendant's information network, including, without limitation, full name, address, date of birth, phone number, email address, financial information, Social Security number, and health enrollment information like group name, identification number, claims/treatment information such as claim numbers, dates of service, procedures, and prescription information for Plaintiffs and the Class.

8.    Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement reasonable and adequate measures to ensure that Plaintiffs' and Class Members' PHI/PII was protected, failing to take available steps to prevent an unauthorized disclosure PHI/PII, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the

encryption of data, even for internal use.

9.      As a result, the PHI/PII belonging to Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiffs and Class Members in the future.

10.     Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are thus entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and Plaintiffs are citizens of a state different from Defendant.

12.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

13.     Defendant is headquartered and routinely conducts business in the Commonwealth where this district is located, has sufficient minimum contacts in this Commonwealth, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

14.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiffs' claims took place within this District, and Defendant does business in this Judicial District.

## PARTIES

15.     Plaintiffs David and Chanelle Zimmerman are adult individuals and, at all

relevant times herein, residents and citizens of Pennsylvania, residing in Montgomery Borough, Pennsylvania. Plaintiffs are victims of the Data Breach.

16.    Plaintiffs, consumers, and clients of Defendant's, sought and received services from Defendant within this state.

17.    As required in order to obtain services from Defendant, Plaintiffs provided Defendant with highly sensitive personal, financial, health and insurance information, who then possessed and controlled it.

18.    As a result, Plaintiffs' information was among the data accessed by an unauthorized third-party in the Data Breach.

19.    At all times herein relevant, Plaintiffs are and were members of each of the Classes.

20.    Plaintiffs each received a letter from Defendant, dated February 13, 2023, stating that their PHI/PII and/or financial information was involved in the Data Breach (the "Notice").

21.    As a result, Plaintiffs are forced to spend time managing the fallout of the Data Breach, which includes: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring credit monitoring and identity theft insurance options; time spent self- monitoring his accounts with heightened scrutiny and time spent seeking legal counsel regarding his options for remedying and/or mitigating the effects of the Data Breach.

22.    Plaintiffs suffered actual injury in the form of damages to and diminution in the value of their PHI/PII—a form of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

23.    Plaintiffs, as a result of the Data Breach, have increased anxiety and increased for their loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling their PHI/PII and/or financial information for nefarious purposes.

24.     Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PHI/PII and financial information, in combination with his name, being placed in the hands of unauthorized and undoubtedly nefarious third parties/criminals.

25.     Plaintiffs have a continuing interest in their PHI/PII and financial information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

26.     Defendant Highmark, Inc. is a corporation located at 120 Fifth Avenue Place, Suite 2114, Pittsburgh, Pennsylvania 15222.

27.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiffs.

28.     Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of such his responsible parties when its identities become known.

## CLASS ACTION ALLEGATIONS

29.     Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following classes/subclass(es) (collectively, the "Class"):

**Nationwide Class:**
> All individuals within the United States of America whose PHI/PII and/or financial information was exposed to unauthorized third-parties as a result of the data breach discovered by Defendant on or around December 2022.

**Pennsylvania Subclass:**
> All individuals within the State of Pennsylvania whose PII/PHI was stored by Defendant and/or was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on or around December 22.

30.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any

and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

31.     Plaintiffs reserve the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

32.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed classes is easily ascertainable.

33.     <u>Numerosity:</u> A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Plaintiffs Classes (which Plaintiffs are informed and believes, and on that basis, alleges that the total number of persons is in the hundreds of thousands of individuals and can be determined an analysis of Defendant's records) are so numerous that joinder of all members is impractical, if not impossible.

34.     <u>Commonality:</u> Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

      a.   Whether Defendant owns a legal duty to Plaintiffs and the Classes to exercise due care in collecting, storing, using and/or safeguarding their PII/PHI;

      b.   Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

      c.   Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII/PHI of Plaintiffs and Class Members;

e.  Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

f.  Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

g.  How and when Defendant actually learned of the Data Breach;

h.  Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII/PHI had been compromised;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiffs and Class Members;

k.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct; and

l.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

35.  <u>Typicality:</u> Plaintiffs' claims are typical of the claims of the Plaintiffs Classes. Plaintiffs and all members of the Plaintiffs Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

36.  <u>Adequacy of Representation:</u> Plaintiffs in this class action are adequate representatives of each of the Plaintiffs Classes in that the Plaintiffs has the same interest in the litigation of this case as the Class Members, is committed to vigorous prosecution of

this case and has retained competent counsel who are experienced in conducting litigation of this nature.

37.     Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the classes in its entirety. Plaintiffs anticipates no management difficulties in this litigation.

38.     <u>Superiority of Class Action:</u> Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiffs Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Plaintiffs Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

39.     The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

40.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

41.     Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiffs.

42.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PHI/PII and/or financial information of Class Members, and

Defendant may continue to act unlawfully as set forth in this Complaint.

43.     Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

### Defendant Collected/Stored Class Members' PHI/PII and Financial Information

44.     Defendant acquired, collected, and stored and assured reasonable security over Plaintiffs' and Class Members' PHI/PII and financial information.

45.     As a condition of its relationships with Plaintiffs and Class Members, Defendant required that Plaintiffs and Class Members entrust Defendant with highly sensitive and confidential PHI/PII and financial information.

46.     Defendant, in turn, stored that information in the part of Defendant's system that was ultimately affected by the Data Breach.

47.     By obtaining, collecting, and storing Plaintiffs' and Class Members' PHI/PII and financial information, Defendant assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Plaintiffs' and Class Members' PHI/PII and financial information from unauthorized disclosure.

48.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PHI/PII and financial information.

49.     Plaintiffs and Class Members relied on Defendant to keep their PHI/PII and financial information confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

50.     Defendant could have prevented the Data Breach, which began no later than May 26, 2022, by properly securing and encrypting and/or more securely encrypting its servers generally, as well as Plaintiffs' and Class Members' PHI/PII and financial

information.

51.     Defendant's negligence in safeguarding Plaintiffs' and Class Members' PHI/PII and financial information is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

52.     Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiffs' and Class Members' PHI/PII and financial information from being compromised.

**The Cyberattack**

53.     In the course of the Data Breach, one or more unauthorized third-parties accessed Class Members' sensitive data including, but not limited to: full name, mailing address, data of birth, Medicaid identification number, medication names, prescriber name, and appeal number.

54.     According to the Data Breach Notification, which Defendant filed with the Office of the Attorney General for the State of Maine, 300,000 persons were affected by the Data Breach.[1]

55.     Plaintiffs were provided the information detailed above upon his receipt of a letter from Defendant, dated February 13, 2023. Plaintiffs were not aware of the Data Breach—or even that Defendant was still in possession of their data until receiving that letter.

**Defendant's Failed Response to the Breach**

56.     Not until roughly two months after it claims to have discovered the Data Breach did Defendant begin sending the Notice to persons whose PHI/PII and/or financial information Defendant confirmed was potentially compromised as a result of the Data

---

[1] "Entity Name: Highmark." Data Breach Notifications, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/67bb2ced- 9a70-4248-b728- 68a92a56c860.shtml (last accessed March 3, 2023).

Breach.

57.    The Notice included, inter alia, basic details of the Data Breach, Defendant's recommended next steps, and Defendant's claims that it had learned of the Data Breach on December 13, 2022, completed a review thereafter.

58.    Upon information and belief, the unauthorized third-party cybercriminals gained access to Plaintiffs' and Class Members' PHI/PII and financial information with the intent of engaging in misuse of the PHI/PII and financial information, including marketing and selling Plaintiffs' and Class Members' PHI/PII.

59.    Defendant had and continues to have obligations created by HIPAA, applicable federal and state law as set forth herein, reasonable industry standards, common law, and its own assurances and representations to keep Plaintiffs' and Class Members' PHI/PII confidential and to protect such PHI/PII from unauthorized access.

60.    Plaintiffs and Class Members were required to provide their PHI/PII and financial information to Defendant in order to receive healthcare, and as part of providing healthcare, Defendant created, collected, and stored Plaintiffs and Class Members with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

61.    Despite this, Plaintiffs and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used, and what steps are being taken, if any, to secure their PHI/PII and financial information going forward.

62.    Plaintiffs and Class Members are, thus, left to speculate as to where their PHI/PII ended up, who has used it and for what potentially nefarious purposes, and are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

63.    Unauthorized individuals can now easily access the PHI/PII and/or financial information of Plaintiffs and Class Members.

**Defendant Had an Obligation to Protect the Stolen Information**

64.    Defendant's failure to adequately secure Plaintiffs' and Class Members' sensitive data breaches duties it owes Plaintiffs and Class Members under statutory and common law. Under HIPAA, health insurance providers have an affirmative duty to keep patients' Protected Health Information private. As a covered entity, Defendant has a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiffs' and Class Members' data. Moreover, Plaintiffs and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard their data, independent of any statute.

65.    Because Defendant is covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

66.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

67.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

68.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

69.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

70.    HIPAA's Security Rule requires Defendant to do the following:

a.  Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.  Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.  Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.  Ensure compliance by its workforce.

71.    HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

72.    Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

73.    Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."[2]

74.    In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII and financial information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

---

[2] The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

75.    Defendant owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PHI/PII and financial information of Plaintiffs and Class Members.

76.    Defendant owed a duty to Plaintiffs and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the PHI/PII and financial information in its possession was adequately secured and protected.

77.    Defendant owed a duty to Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect the PHI/PII and financial information in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

78.    Defendant owed a duty to Plaintiffs and Class Members to implement processes that would immediately detect a breach on its data security systems in a timely manner.

79.    Defendant owed a duty to Plaintiffs and Class Members to act upon data security warnings and alerts in a timely fashion.

80.    Defendant owed a duty to Plaintiffs and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PHI/PII and/or financial information from theft because such an inadequacy would be a material fact in the decision to entrust this PHI/PII and/or financial information to Defendant.

81.    Defendant owed a duty of care to Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

82.    Defendant owed a duty to Plaintiffs and Class Members to encrypt and/or more reliably encrypt Plaintiffs' and Class Members' PHI/PII and financial information and monitor user behavior and activity in order to identity possible threats.

**Value of the Relevant Sensitive Information**

14

83.     PHI/PII and financial information are valuable commodities for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on a number of underground internet websites.

84.     Numerous sources cite dark web pricing for stolen identity credentials, for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200[3]; Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web[4]; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995.[5]

85.     Identity thieves can use PHI/PII and financial information, such as that of Plaintiffs and Class Members which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims—for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

86.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PHI/PII and/or financial information is stolen and when it is used: according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent

---

[3] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-darkweb-how-much-it-costs/ (last accessed March 3, 2023).
[4] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-yourpersonal-information-is-selling-for-on-the-dark-web/ (last accessed March 3, 2023).
[5] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymousbrowsing/in-the-dark/ (last accessed March 3, 2023).

use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

87.     Here, Defendant knew of the importance of safeguarding PHI/PII and financial information and of the foreseeable consequences that would occur if Plaintiffs' and Class Members' PHI/PII and financial information was stolen, including the significant costs that would be placed on Plaintiffs and Class Members as a result of a breach of this magnitude.

88.     As detailed above, Defendant is a large, sophisticated organizations with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiffs and Class Members. Its failure to do so is, therefore, intentional, willful, reckless and/or grossly negligent.

89.     Defendant disregarded the rights of Plaintiffs and Class Members by, inter alia, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs' and Class Members' PHI/PII and/or financial information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

## CAUSES OF ACTION

### COUNT ONE

### Negligence

---

[6] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed March 3, 2023).

**(On behalf of the Nationwide Class and the Pennsylvania Subclass)**

90.    Plaintiffs re-allege and incorporates by reference all proceeding paragraphs as if fully set forth herein.

91.    Plaintiffs and Class Members entrusted Defendant with their PHI/PII.

92.    Plaintiffs and Class Members entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PHI/PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

93.    Defendants has full knowledge of the sensitivity of the PHI/PII and the types of harm that Plaintiff and Class Members could and would suffer if the PHI/PII were wrongfully disclosed.

94.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PHI/PII of Plaintiffs and Class Members involved an unreasonable risk of harm to Plaintiffs and Class Members, even if the harm occurred through the criminal acts of a third party.

95.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PHI/PII of Plaintiffs and Class Members in Defendant's possession was adequately secured and protected.

96.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII they were no longer required to retain pursuant to regulations.

97.    Defendants also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PHI/PII of Plaintiffs and Class Members.

98.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and Class Members. That

17

special relationship arose because Plaintiffs and Class Members entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

99.    Defendant were subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or Class Members.

100.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

101.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PHI/PII of Plaintiffs and Class Members, the critical importance of providing adequate security of that PHI/PII, and the necessity for encrypting PHI/PII stored on Defendant's systems.

102.    Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decisions not to comply with industry standards for the safekeeping of the PHI/PII of Plaintiffs and Class Members, including basic encryption techniques freely available to Defendants.

103.    Plaintiffs and Class Members had no ability to protect their PII that was in, and possibly remains in, Defendants' possession.

104.    Defendant were in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

105.    Defendant had and continues to have a duty to adequately disclose that the PHI/PII of Plaintiff and Class Members within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their

PHI/PII by third parties.

106.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and Class Members.

107.    Defendant has admitted that the PII of Plaintiffs and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

108.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PHI/PII of Plaintiffs and Class Members during the time the PHI/PII was within Defendant's possession or control.

109.    Defendant improperly and inadequately safeguarded the PHI/PII of Plaintiffs and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

110.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PHI/PII of Plaintiffs and Class Members in the face of increased risk of theft.

111.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of PHI/PII.

112.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove PHI/PII it was no longer required to retain pursuant to regulations.

113.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and Class Members the existence and scope of the Data Breach.

114.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the PHI/PII of Plaintiffs and Class Members would not have been compromised.

115.    There is a close causal connection between Defendant's failure to implement

security measures to protect the PHI/PII of Plaintiffs and Class Members and the harm, or risk of imminent harm, suffered. The PHI/PII of Plaintiffs and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

116.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PHI/PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

117.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PHI/PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PHI/PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and Class Members.

118.    Defendant's violation of Section 5 of the FTC Act constitutes negligence per se.

119.    Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

120.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

121.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PHI/PII is

used; (iii) the compromise, publication, and/or theft of their PHI/PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI/PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PHI/PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI/PII of Plaintiffs and Class Members; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PHI/PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

122.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

123.    Additionally, as a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their PHI/PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

124.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs and Class Members are entitled to recover actual, consequential, and nominal damages.

## COUNT TWO

## Breach of Implied Contract

**(On behalf of the Nationwide Class and the Pennsylvania Subclass)**

125.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though full set forth herein.

126.    Through its course of conduct, Defendant, Plaintiffs and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' PHI/PII and financial information.

127.    Defendant required Plaintiffs and Class Members to provide and entrust their PHI/PII and financial information as a condition of obtaining Defendant's services.

128.    Defendant solicited and invited Plaintiffs and Class Members to provide their PHI/PII and financial information as part of Defendant's regular business practices.

129.    Plaintiffs and Class Members accepted Defendant's offers and provided their PHI/PII and financial information to Defendant.

130.    As a condition of being direct customers/patients/employees of Defendant, Plaintiffs and Class Members provided and entrusted their PHI/PII and financial information to Defendant.

131.    In so doing, Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non- public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and Class Members if their data had been breached and compromised or stolen.

132.    A meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their PHI/PII and financial information to Defendant, in exchange for, amongst other things, the protection of its PHI/PII and financial information.

133.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

134.    Defendant breached the implied contracts it made with Plaintiffs and Class

Members by failing to safeguard and protect its PHI/PII and financial information and by failing to provide timely and accurate notice to them that their PHI/PII and financial information was compromised as a result of the Data Breach.

135.    As  a  direct and proximate result  of  Defendant's above-described breach of implied contract, Plaintiffs and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

## COUNT THREE

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (On behalf of the Nationwide Class and the Pennsylvania Subclass)

136.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though full set forth herein.

137.    Every contract in this Commonwealth has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

138.    Plaintiffs and Class Members have complied with and performed all conditions of their contracts with Defendant.

139.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PHI/PII and financial information, failing to timely and accurately disclose the Data Breach to Plaintiffs and Class Members and continued acceptance of PHI/PII and financial information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

140.    Defendant acted in bad faith and/or with malicious motive in denying

Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## COUNT FOUR

### Unjust Enrichment

### (On behalf of the Nationwide Class and the Pennsylvania Subclass)

141.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though full set forth herein.

142.    By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiffs and Class Members.

143.    Defendant, prior to and at the time Plaintiffs and Class Members entrusted their PHI/PII and financial information to Defendant for the purpose of obtaining health services, caused Plaintiffs and Class Members to reasonably believe that Defendant would keep such PHI/PII and financial information secure.

144.    Defendant was aware, or should have been aware, that reasonable patients and consumers would have wanted their PHI/PII and financial information kept secure and would not have contracted with Defendant, directly or indirectly, had they known that Defendant's information systems were sub-standard for that purpose.

145.    Defendant was also aware that, if the substandard condition of and vulnerabilities in its information systems were disclosed, it would negatively affect Plaintiffs' and Class Members' decisions to seek services therefrom.

146.    Defendant failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiffs and Class Members made their decisions to make purchases, engage in commerce therewith, and seek services or information.

147.    Instead, Defendant suppressed and concealed such information. By concealing and suppressing that information, Defendant denied Plaintiffs and Class Members the ability to make a rational and informed purchasing and health care decision

and took undue advantage of Plaintiffs and Class Members.

148.    Defendant was unjustly enriched at the expense of Plaintiffs and Class Members, as Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiffs and Class Members; however, Plaintiffs and Class Members did not receive the benefit of their bargain because they paid for products and/or health care services that did not satisfy the purposes for which they bought/sought them.

149.    Since Defendant's profits, benefits, and other compensation were obtained by improper means, Defendant is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized from these transactions.

150.    Plaintiffs and Class Members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

**COUNT FIVE**

**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**

**73 P.S. § 201,** *et seq.*

**(On behalf of Zimmerman Plaintiffs and the Pennsylvania Subclass)**

151.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though full set forth herein.

152.    Plaintiffs and the Pennsylvania Subclass purchased services from Defendant primarily for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2.

153.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, ….Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;:" (iii) "Advertising goods or services with intent

not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

154. Defendant engaged in unlawful trade practices, representing that its services had characteristics, uses, benefits, and qualities which they do not; representing that its services are of a particular standard and quality when they are not; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

155. In the conduct of their business, trade, and commerce, and in furnishing services for residents of the Pennsylvania, Defendant engaged in deceptive, unfair, and unlawful trade acts or practices, including but not limited to, the following:

    a. Failing to develop, implement and maintain reasonable safeguards to protect the security, confidentiality and integrity of Plaintiffs' and Class members' PHI/PII, and omitting, suppressing, and concealing the material fact of that failure;

    b. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' PHI/PII, including duties imposed by HIPAA and the FTC Act, 15 U.S.C. § 45, and omitting, suppressing, and concealing the material fact of that failure;

    c. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Class members' PHI/PII, including by implementing and maintaining reasonable security measures;

    d. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' PHI/PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    e. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Class members' PHI/PII; and

    f. Omitting, suppressing, and concealing the material fact that it did not comply

with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' PHI/PII, including duties imposed by HIPAA and the FTC Act, 15 U.S.C. § 45.

156.    Defendant systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiffs and Class members.

157.    Defendant willfully engaged in such acts and practices and knew that it violated § 349 or showed reckless disregard for whether it violated the Pennsylvania UTPCPL.

158.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and Class members suffered injury and/or damages, including the loss of their legally protected interest in the confidentiality and privacy of their PHI/PII.

159.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

160.    Defendant knew or should have known that the online system it configured and designed, its data security practices, and its unauthorized disclosures were inadequate to safeguard Class members' PHI/PII and that therefore the risk of data breach or PHI/PII disclosures to unauthorized third parties was highly likely.

161.    Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless.

162.    Plaintiffs and Class members seek relief under Pennsylvania UTPCPL, including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of himself and each member of the proposed National Class and the Pennsylvania Subclass, respectfully request that the Court enter

judgment in their favor and for the following specific relief against Defendant as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Plaintiffs' counsel as Class Counsel;

2.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.    That the Court enjoin Defendant, ordering them to cease and desist from unlawful activities;

4.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII/PHI, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Class Members;

5.    For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an Order:

a.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b.    requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c.    requiring Defendant to delete and purge the PII/PHI of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

d.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and

integrity of Plaintiffs' and Class Members' PII/PHI;

e.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

f.    prohibiting Defendant from maintaining Plaintiffs' and Class Members' PII/PHI on a cloud-based database;

g.    requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.    requiring Defendant to conduct regular database scanning and securing checks;

i.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII/PHI, as well as protecting the PII/PHI of Plaintiffs and Class Members;

j.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

k.    requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and

l.    requiring Defendant to meaningfully educate all Class Members about

the threats that they face as a result of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.      For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law; and

8.      For all other Orders, findings, and determinations identified and sought in this Complaint.

## **<u>JURY DEMAND</u>**

Plaintiffs, individually and on behalf of the Plaintiffs Class(es) and/or Subclass(es), hereby demands a trial by jury for all issues triable by jury.

Date: March 16, 2023                Respectfully Submitted,

_s/ Christian Bagin_
Christian Bagin
PA ID #85511
**WIENAND AND BAGIN**
100 1st Avenue, Suite 1010
Pittsburgh, PA 15222
Telephone:      412-281-1110
Facsimile:       412-281-8481
christian@wienandandbagin.com

William M. Audet (pro hac vice forthcoming)
Ling Y. Kuang (pro hac vice forthcoming)
Kurt D. Kessler (pro hac vice forthcoming)
**AUDET & PARTNERS, LLP**
711 Van Ness, Suite 500
San Francisco, CA 94102-3229
Telephone: 415.568.2555
waudet@audetlaw.com
lkuang@audetlaw.com
kkessler@audetlaw.com

_Counsel for Plaintiffs and Proposed Class_